## Northampton, Bucks County Municipal Authority v. Adler

*Henry F. Huhn*, for condemnor.
*Frank J. Eisenhart, Jr.*, for condemnees.

KELTON, *J.*, March 31, 1980—In the four foregoing sewer easement condemnation cases, we have received notice of appeal to the Commonwealth Court from our order entered March 26, 1980.[1] In that order we directed that a joint trial be held commencing Monday, March 31, 1980 to determine the appropriate eminent domain damages to be awarded to the owners of four separately owned tracts of land.

Pursuant to Pa.R.A.P. 1925, we set forth herein the reasons for our joint trial order.

In brief summary, we consider that the amount of delay which has already occurred in the disposition of these cases is totally outrageous and inexcusable. As trial judge, we felt compelled to take strong measures to attempt to secure the "just, speedy and inexpensive determination of [this] action." Pa.R.C.P. 126.

By way of historical background, the four separate condemnation proceedings all arose out of a single condemnation resolution adopted almost twelve years ago by the Northampton, Bucks County Municipal Authority on October 11, 1968. In that resolution the authority resolved to acquire easements over fifteen separate parcels of land all in close proximity to each other and situate along Pine Run Creek, Northampton Township.

Pursuant to the resolution, the authority filed declarations of taking with the Prothonotary of Bucks County, all docketed at separate caption numbers. The condemnations were filed with the prothonotary on October 9, 1968 and included the above four cases.

---

1. We express no opinion whether the order is appealable, but have continued the trial until jurisdiction is resumed by this court.

Thereafter, after considerable delay which is not explained in the record, separate juries of view held hearings and entered awards in each of the four cases, appeals were filed from the four awards by either the attorney for the authority or the attorney for the property owners and the matters were ordered down for trial in the normal manner.

The Bucks County Court Administrator thereafter listed the cases consecutively on this court's civil trial list for jury trials to be held sometime during the two week period commencing March 24, 1980. On March 25, 1980 we received from the single counsel representing the four property owners a petition and proposed rule to show cause why the four matters should not be consolidated ". . . for all purposes, including trial. . . ."

Because there were individual property interests in the four separate properties we deemed it inappropriate to direct a complete consolidation for all purposes and therefore determined that instead of handling the matter with a time consuming rule to show cause, we should enter an order on our own motion directing that joint trial be held *without* a consolidation of the separate causes of action.

By way of additional background, the condemning authority, by its own estimates of just compensation, initially determined that the following amounts of damages were involved in each of the four cases:

| No. 1672—Adler/Collins | $1,600. |
| No. 1674—McGerr | 450. |
| No. 1675—Springer | 350. |
| No. 1678—Frazier | 400. |

We estimate that the distance between the Bucks County Courthouse and the site of the condemnations is approximately 15 miles. If four separate round trips by bus are required it would require

approximately 120 miles of bus driving compared to 30 miles for a joint trial. The additional costs to the users of Northampton Authority, the property owners, the county and taxpayers and the sheer wasting of judicial time necessitated by four separate trips by the trial judge to accompany four separate juries on physical views of the two contiguous properties and two others within walking distance seemed to us to be totally unwarranted if a less expensive procedure was legally permissible. In addition, the parties themselves—both the condemning authority and the property owners— would have to pay their counsel and their expert witnesses for four separate trials.

Also, the unnecessary waste of valuable court time and space would be enormous and totally without justification. Bucks County currently has a backlog of 337 cases awaiting trial on its civil jury list. Although this figure has been reduced from 387 in the last seven months, we fully expect that the backlog will increase again substantially between now and August, 1980 because of the Supreme Court's new civil trial certification rule adopted November 19, 1979: 9 Pa. Bull. 3936 (1979). Because we currently have a judicial vacancy and a shortage in the amount of judicial time available for civil trials we simply cannot tolerate a frivolous wasting of judicial resources.

Our authority for ordering joint trials is based upon the provisions of section 515 of the Eminent Domain Code of June 22, 1964, P.L. (Sp. Sess.) 84, sec. 515, 26 P.S. §1-515. Although that section does not make it entirely clear that a "joint trial" may be held in cases where there are common questions of law and potentially differing question of fact, in our view, a joint trial as distinguished from a consoli-

dated trial is not expressly prohibited by that section. As we read section 515, consolidated appeals should not be heard where the questions of law are not common. Nothing is said about joint unconsolidated trials where there are common legal questions but differing damage issues.

Section 515 provides:

" . . .

"The court, on its own motion, or on application of any party in interest, may consolidate separate appeals involving only common questions of law as one proceeding. . . ."

The commissioner's comment to section 515 provides, in part, as follows:

"The provision of this section authorizing the court on its own motion to consolidate appeals is taken from Pa.R.C.P. 213. (Under existing law a party is entitled to a separate trial on appeal. Comly v. [City of] Phila., 153 Pa. Superior Ct. 539 [35 A. 2d 85] (1943); [In re] Edgmont Ave., [14 Del. 536] 28 Dist. Rep. 256 (1918), where the court indicated that this right is guaranteed by the Pennsylvania Constitution, Art. XVI, §8). This section, then, changes present law where the cases are consolidated by the court. There would be no separate jury trial when the consolidated cases present only a question of law."[2]

As noted, the commissioner's comments to section 515 refer the reader to Pa.R.C.P. 213. That rule in paragraph (a) thereof, provides as follows:

"When actions involving a common question of

---

2. No constitutional question appears to be involved. The property owners are seeking the joint trial. *They* and not the authority have the protectible constitutional interest.

law or fact are pending before the court, the court on its own motion or on motion of any party may order a joint hearing or trial of any or all the matters in issue in the actions, may order all of the actions consolidated, and may make such orders concerning proceedings therein as may avoid unnecessary costs or delay."

As will be noted from the foregoing rule a distinction is made between true consolidation and joint trials with separate verdicts. Although the questions of law in all four cases clearly appear to be common, it is of course true that the *factual* questions as to valuation will be different in each case. We do not believe, however, that a joint eminent domain trial would be any more complex or difficult for the trial judge or jury than any criminal trial involving joint defendants, or a civil negligence case where driver and passenger were both injured in the same car accident. See 1 Goodrich-Amram 2d §213(a):11-1 and cases cited therein.

As authority for our order, we referred therein also to Pa.R.C.P. 126, 2226 and 2229, Peterson v. Pittsburgh Public Parking Authority, 383 Pa. 383, 388, 119 A. 2d 79 (1956), and Buchanan v. Brentwood Federal Savings & Loan Assoc., 457 Pa. 135, 161, 320 A. 2d 117 (1974).

Rule 2226, by defining "action" as "any civil action or proceeding at law," clearly appears to contemplate inclusion of eminent domain proceedings in the joinder of parties rules, at least after appeal from the jury of view (compare Pa.R.C.P. 4001(a) and (b) and see comment at 10 Goodrich-Amram 2d §4001(a):2).

Rule 2229(a) provides:

"(a) Persons may join as plaintiffs who assert any right to relief jointly, severally, separately or in

the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the rights to relief of all such persons will arise in the action."

Peterson, supra, clearly holds that a joint trial of the separately condemned interests of neighboring property owners may appropriately be authorized under Pa.R.C.P. 213(a). In that case a lot owner, the owner of leasehold improvements on the same lot and the separate owner of an adjacent lot were all permitted to try their cases together. After considering the objections of the condemning authority, the court stated at p. 388:

"The defendant, in its appeal here, also questions the consolidation of the several actions of the plaintiffs in one trial. Such a joinder is proper under Rule 213(a) of the Pennsylvania Rules of Civil Procedure since common questions of fact and law are involved. In both cases the legal question was identical: Did the plaintiffs have private rights or easements in the controverted alleys? The only matter which required separate treatment was the question of the amount of the damages. Under the able instructions of the Trial Judge, the jury was able to separate the claims of the individual plaintiffs and evaluate them on their own particular merits."

In our opinion, we would be remiss in our duties if we failed in this case to recognize the uncalled for delays that have already occurred in these 11½ year old cases. Our order was merely an attempt (currently ineffectual because of the authority's lawyer's appeal) to ". . . devise procedural methods for the prompt, efficient, and equitable disposition of . . . [the property owners'] claims." See Bucha-

nan, supra, at p. 161 (Roberts, J.), and also at p. 166, fn. 7 (Pomeroy, J., concurring).

We entered our order for the foregoing reasons.